NO. 14-51132

# In the United States Court of Appeals for the Fifth Circuit

---

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE,

V.

CITY OF AUSTIN, TEXAS,
DEFENDANT-APPELLEE,

V.

INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 975, ANDRES ARREOLA, ANDREW BLAIR, CAROLINE BULL, JOHN EDMISTON, DANIEL HATCHERSON, STEVEN HERRERA, WILLIAM KANA, MATTHEW MARTIN, MATTHEW RETTIG, AND MEAGAN STEWART,
INTERVENORS-APPELLANTS.

---

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 1:14-cv-00533, the Hon. Lee Yeakel, Judge Presiding

---

## EMERGENCY MOTION TO STAY AND TO EXPEDITE APPEAL

---

Kevin J. Terrazas
Sara E. Janes
Nicole S. LeFave
WEISBART SPRINGER HAYES, LLP
212 Lavaca Street, Suite 200
Austin, Texas 78701
[Tel.] (512) 652-5794
[Fax] (512) 682-2074

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF INTERESTED PERSONS

No. 14-51132

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE,
V.

CITY OF AUSTIN, TEXAS,
DEFENDANT-APPELLEE,
V.

INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 975, ANDRES ARREOLA, ANDREW BLAIR, CAROLINE BULL, JOHN EDMISTON, DANIEL HATCHERSON, STEVEN HERRERA, WILLIAM KANA, MATTHEW MARTIN, MATTHEW RETTIG, AND MEAGAN STEWART,
INTERVENORS-APPELLANTS.

---

The undersigned counsel of record certifies the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate their possible recusal or disqualification.

1. Intervenors-Appellants International Association of Fire Fighters, Local 975, Andres Arreola, Andrew Blair, Caroline Bull, John Edmiston, Daniel Hatcherson, Steven Herrera, William Kana, Matthew Martin, Matthew Rettig, and Meagan Stewart are represented in the Fifth Circuit by:

Kevin J. Terrazas
Sara E. Janes
Nicole S. LeFave

WEISBART SPRINGER HAYES, LLP
212 Lavaca Street, Suite 200
Austin, Texas 78701

2. Intervenors-Appellants International Association of Fire Fighters, Local 975, Andres Arreola, Andrew Blair, Caroline Bull, John Edmiston, Daniel Hatcherson, Steven Herrera, William Kana, Matthew Martin, Matthew Rettig, and Meagan Stewart were represented in the district court by:

Kevin J. Terrazas
Sara E. Janes
Nicole S. LeFave
WEISBART SPRINGER HAYES LLP
212 Lavaca Street, Suite 200
Austin, Texas 78701

B. Craig Deats
DEATS, DURST, OWEN & LEVY, PLLC
1204 San Antonio Street, Suite 203
Austin, Texas 78701

3. Plaintiff/Appellee United States of America is represented in the Fifth Circuit and district court by:

Delora L. Kennebrew
Meredith Burrell
Shayna Bloom
Trevor Blake
US DEPARTMENT OF JUSTICE
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue NW
Washington, DC 20530

4. Defendant/Appellee City of Austin is represented in the Fifth Circuit and district court by:

B. Lee Crawford, Jr.
CITY OF AUSTIN LAW DEPARTMENT
P.O. Box 1088
Austin, Texas 78767

R. Lawrence Ashe, Jr.
Paul R. Barsness
PARKER, HUDSON, RAINER & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, Georgia 30303

/s/ Kevin J. Terrazas
Kevin J. Terrazas

## Emergency Motion to Stay and to Expedite Appeal

Pursuant to Federal Rules of Appellate Procedure 2 and 8(2) and Fifth Circuit Rule 27.5, Appellants the Austin Firefighters Association (AFA) and the individual intervenors (collectively, Intervenors), ask the Court to stay any further proceedings in the district court, including the fairness hearing set for October 29, 2014, and to expedite the appeal.

In short, the United States through the Department of Justice (DOJ) and the City of Austin seek to infringe on the statutory and contractual rights of the Intervenors by overriding the state-mandated hiring process and the collective bargaining agreement (CBA) in effect at the time. In doing so, the DOJ and City provide no evidence that the statutory scheme or the CBA caused any violation of federal law. Instead, the DOJ sued one party to the CBA but then vehemently opposed allowing the other contractual party to defend the hiring processes that were developed from that contract. Because Intervenors have a strong interest in the claims asserted and the proposed consent decree, intervention is warranted and a stay is necessary to preserve the status quo until the appeal can be decided.

## Background

On June 9, 2014, the DOJ filed a complaint against the City asserting that the 2012 and 2013 firefighter hiring processes violated Title VII through disparate impact. However, the case actually began

long before, during the collective bargaining process for the agreement that was in effect at the time of the complained of hiring processes.

Collective bargaining over the hiring process is important because absent agreement with the AFA, the City is restricted to implementing a 100-point "written examination" that inquires "into the applicant's general education and mental ability," and then rank-ordering the candidates based on these scores and the addition of 5 points for those who have been honorably discharged from the military. TEX. LOC. GOV'T CODE §§ 143.025(b), (f), & (i). State law provides that collective bargaining is the sole method to modify these statutorily mandated procedures. *Id.* § 174.006. Therefore, unless the City intends to use the state-mandated process, which it has not done since before 2000, it is required by statute to bargain with the AFA to make any changes.

Because the City had always intended to deviate from the state-mandated hiring process, it grudgingly engaged in bargaining with the AFA over hiring in 2008. At that time, the City's lead negotiator stated that if the AFA did not give the City unfettered hiring, the City would wait for an EEOC complaint, offer a weak defense, and then strip the CBA hiring article away from the AFA. Dkt. 16-8; Dkt. 16-9.

Despite the AFA not giving the City unfettered control over the hiring process, in December 2009 the parties entered into a CBA, which included an entire article devoted solely to the hiring process. Dkt. 16-2

at 34-36[1] (providing specific requirements for hiring of fire cadets, including a scored (*i.e.* not pass/fail) written cognitive exam, and rank ordering determined from the composite score of all scored selection devices). The AFA and City specifically agreed to alter the state-mandated process for all hiring during the term of the agreement. *Id.* at 34 ("The Association . . . hereby agrees to the deviations from Chapter 143 hiring procedures specifically authorized by this Article.").

In 2012, the City administered two written examinations—the National Firefighter Selection Inventory (NFSI) and an Integrity Inventory—to approximately 2600 applicants who met minimum qualifications. Dkt. 3-4 at 9. However, in administering the NFSI, the City inadvertently gave the applicants 2 hours rather than the 2.5 hours required by the test designers. Dkt. 3-6 at 13. Despite this administration error, the City continued the process, inviting applicants who passed the Integrity Inventory, received a score of 70 or above on the NFSI, and were among the top 1500 NFSI scorers to participate in a structured oral interview (SOI). Dkt. 3-4 at 10. Limiting the number of applicants to the top 1500 NFSI scorers effectively created a pass-fail cutoff of 75.06 on the NFSI. *Id.* Applicants who passed the SOI were placed on an eligibility list in descending rank order based on their total scores, which were created by combining NFSI scores (weighted one-

---

[1] All citations to docket entries are to the page numbers provided by the district court, not the page numbers provided by the filer.

third) and SOI scores (weighted two thirds) and adding military points where applicable. *Id.* 102 applicants were ultimately hired.

In 2013, the City began another hiring process, this time administering a five-part written cognitive-behavioral exam called the National Entry-Level Firefighter examination (NELF) to more than 2500 applicants (giving the appropriate time to complete the exam). All applicants who took the NELF were invited to participate in a SOI. More than 2000 applicants took the SOI. Despite completing the major sections of the test, the City never certified (i.e., finalized) the process. Thus, the 2013 hiring process was never used to hire any candidates.

Despite the undisputed facts that the 2012 process was not administered correctly and the 2013 hiring process was never certified for use, the DOJ began an investigation into those processes in April 2013, eventually filing suit over a year later, in June 2014. Based on the City's prior statements and actions, it was no surprise that before the complaint was even filed, the DOJ and the City had agreed to a consent decree that would bypass the state-law requirements for hiring and avoid the statutory mandate for the City to collectively bargain with the AFA, as well as violate the terms of the collective bargaining agreement at issue in the complaint and the statutory seniority rights of individual firefighters. Two days after the complaint was filed, the district court preliminarily entered the proposed decree, even though it was offered without statistical evidence showing that any adverse impact found in

the 2012 hiring process was due to the challenged hiring practices and without specifying that the 2013 process was never finalized (and thus could not have caused any disparate impact). The court also set a fairness hearing, which is currently scheduled for October 29, 2014.

Seeking to protect their statutory rights and to ensure that no changes would be made to the hiring processes derived by the collective bargaining agreement in effect at the time without a proven federal law violation, Appellants moved to intervene four days after the complaint.

On September 15th, the district court denied intervention, concluding that "[a]ny concerns the AFA desires to raise may appropriately be addressed through collective bargaining with the City and the Consent Decree's objection and fairness-hearing process." Dkt. 38 at 5. However, after the district court ordered no more briefing, Dkt. 35 at 2, the City exposed its true colors, *refusing* to collectively bargain with the AFA over hiring. *See* Dkt. 39 at 2. Based on that fact, and also on recent promotion eligibility lists showing that even a half-point increase in seniority can make the difference between a person being promoted, Intervenors filed a motion for reconsideration and, alternatively, a motion to stay. Dkt. 39. The district court denied this motion on October 8, 2014. Dkt. 44. Intervenors immediately appealed.

## ARGUMENT

A stay is appropriate in this case because Intervenors have key interests that they cannot properly protect absent intervention, and failing to stay the case may result in a consent decree being entered before the merits of Intervenors' appeal are considered.

In general, in deciding whether to stay a district court's order, the Court considers four factors: (1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest. *United States v. McKenzie*, 697 F.2d 1225, 1226 (5th Cir. 1983). All four factors support staying this case.

### I. INTERVENORS ARE LIKELY TO SUCCEED ON THE MERITS.

First, a stay should be granted because Intervenors are likely to prevail on the merits. Intervention as of right has four requirements: (1) timeliness; (2) an interest relating to the property or transaction that is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the ability to protect that interest; and (4) the interests are inadequately represented. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc). This is a "flexible" inquiry, "which focuses on the particular facts and circumstances surrounding each application [for

intervention]." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (en banc) (internal marks omitted). Moreover, while the criteria are mandatory, "rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor." *Poynor v. Chesapeake Energy, LP (In re Lease Oil Antitrust Litig.)*, 570 F.3d 244, 248 (5th Cir. 2009).

The district court denied intervention based on its determinations that Intervenors did not have an interest in the proposed decree and that any interest they might have could be protected through collective bargaining or the fairness hearing. But the AFA has a statutory right to collectively bargain for any changes to the state-mandated hiring process, and it has an interest in protecting its bargain with the City encompassed in the CBA in effect at the time of the alleged violations. The individual intervenors, and other AFA members, also have an interest in their seniority as provided by state law. Not only is the district court opinion factually incorrect, but courts have long held that when a decree would violate state law and/or a CBA, that a full adjudication on the merits is necessary.

### A. The AFA Has a Statutory Interest in Maintaining Its Right to Collectively Bargain for any Change to the State-Mandated Hiring Process.

Intervention, and an adjudication on the merits, is necessary because the proposed decree would violate the statutory right of the AFA to collectively bargain over the hiring process. Texas law gives

unions the right to ensure that no hiring process (other than that mandated by statute) will be used absent their consent. *See* TEX. LOC. GOV'T CODE § 174.006. Instead, state law requires that a city bargain with the union if it seeks to alter the state-mandated hiring process of a 100-point written cognitive examination. *Id.*

The proposed consent decree, however, eviscerates the protections afforded the AFA under state law. In other words, the proposed decree gives the City the power to deviate from the Civil Service Act without collective bargaining, and it gives the City complete control as to what hiring process it might use, subject only to the DOJ's objections. *See, e.g.*, Dkt. 3-4 at 18-21, 50. While the proposed decree does not literally foreclose collective bargaining on this subject, the City has shown that it will not voluntarily bargain with the AFA over hiring so long as a decree is proposed, much less if a decree is in place. *See* Dkt. 39 at 2-3; July 29, 2014 Bargaining Meeting at 19:30–23:18, *available at* http://vimeo.com/102080948; July 31, 2014 Bargaining Meeting at 15:50–19:15, *available at* http://vimeo.com/102690811. Therefore, without intervention, the AFA will not be able to protect its statutory interest in the hiring process—an interest "within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *New Orleans Pub. Serv.*, 732 F.2d at 464-65.

### B. The AFA Has a Contractual Interest in Defending the CBA in Effect at the Time of the Alleged Violations.

The AFA also has an interest in defending the CBA at issue against challenges from the DOJ. The bases of the complaint are the specific alterations to the state-mandated process made by the AFA and the City through collective bargaining. The CBA was in effect during both the 2012 hiring process and the written exam and SOI of the 2013 hiring process, and it is required to be enforced. TEX. LOC. GOV'T CODE § 174.109 (providing that any CBA is binding against the employer and all members of the employee group).

The proposed decree, however, seeks to effectively revise the 2009 CBA without the approval of the majority of firefighters, overriding their voice as to procedures they already bargained for. Although the DOJ sued one party to the contract at issue, the City, it intentionally did not sue the other party, the AFA. It defies logic for the DOJ and City to have pointed to hiring processes that existed only because of the CBA as a basis for far-reaching relief, on the one hand, and then to argue that the CBA has no continued importance. Under the DOJ and City's logic, had the DOJ brought suit just months before—asserting the same violations—the AFA would have been allowed to intervene. But because the DOJ delayed, they contend that the AFA cannot defend the contractual rights that form the basis of the alleged violations.

The AFA has a significant interest in ensuring that it can defend

the agreement it reached with the City in 2009 against challenge from the DOJ, especially since the City refuses to do so.

### C. Individual Intervenors, and Other AFA Members, Have Statutory Interests in Their Seniority Rights.

Intervenors also have a statutory interest in protecting their seniority rights. The proposed decree provides for retroactive seniority—giving some priority hires more seniority than current firefighters, including the individual intervenors. Dkt. 3-4 at 50.

There are two components of every promotional examination under state law—test score and seniority. Specifically, applicants for promotion are ranked based on "adding the applicant's points for seniority to the applicant's grade on the written examination." TEX. LOC. GOV'T CODE § 143.033(c). Since the Fire Chief generally[2] is *required* to "appoint the eligible promotional candidate having the highest grade on the eligibility list," *id.* § 143.036(f), seniority affects each and every candidate, in either a positive or negative way.

Even a half point in seniority can have significant consequences. For example, in the 2014 Fire Lieutenant promotional process, candidate 13 has not yet been promoted, despite scoring higher on the

[2] The Fire Chief can bypass the top-ranked candidate for a "valid reason," subject to appeal by the candidate. *See* TEX. LOC. GOV'T CODE § 143.036(f).

examination than the three candidates ahead of him. Dkt. 39-1.[3] Adding 0.5 seniority points would have resulted in a promotion. *See id.* If the list expired today, candidate 13 would have to participate in another promotion cycle before he could be eligible for promotion. The same result expectedly is found in other promotional processes dictated by the Civil Service Act. *See, e.g.*, Dkt. 39-2 (in the 2014 promotional process for Fire Specialist, an addition of 0.5 seniority points would have resulted in candidates at places 17 and 18 already being promoted—having moved six places to 11 and 12). This impact on seniority is exactly the type of interest found sufficient for intervention. *See, e.g.*, *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996); *see also Stallworth v. Monsanto*, 558 F.2d 257, 269 (5th Cir. 1977) ("[seniority rights] represent an expectancy whose significance is difficult to overemphasize, and which should not be lightly or blindly swept aside").

### D. Courts Have Long Held That When a Decree Would Override State Law or a CBA, an Adjudication on the Merits Is Required.

Courts have implicitly recognized the interests described above through long-standing federal jurisprudence requiring a judicial determination on the merits when a proposed consent decree would affect the rights of others. *See Overton v. City of Austin*, 748 F.2d 941,

[3] Intervenors' understanding is that the highlighting performed by the Civil Service Commission as found in these documents identifies those candidates that have been selected for promotion.

956-57 (5th Cir. 1984) ("Absent a properly grounded judicial determination that the present charter provisions are illegal, the consent of the parties provides an insufficient basis on which to judicially ordain a different system of council election and composition."). Indeed, the parties to the proposed decree "must demonstrate the propriety of such relief in a judicial proceeding at which the third party is allowed to present its evidence and voice its objection." *EEOC v. Safeway Stores, Inc.*, 714 F.2d 567, 579-80 (5th Cir. 1983) (requiring "an adjudication that discrimination has occurred"). This requirement has been reinforced several times in this Court. *See, e.g.*, *United States v. City of Miami*, 664 F.2d 435, 447 (5th Cir. 1981) (en banc) (Rubin, J., concurring) ("[I]n the absence of either a trial or an examination of them by the district court, we are not prepared to hold that the consent decree is valid insofar as it deprives the [union] and its members of the benefit of the promotion procedure that was in effect a part of the [union] contract with the City.").

Requiring an adjudication on the merits is based on Supreme Court guidance that "federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or does not flow from such a violation." *Horne v. Flores*, 557 U.S. 433, 450 (2009) (citation and marks omitted); *see also League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 847

(5th Cir. 1993) (en banc) ("[A]ny federal decree must be a tailored remedial response to illegality.").[4]

The requirement for a trial on the merits is even stronger when the proposed decree would affect rights established by a CBA. Indeed, to enter a consent decree that overrides a CBA, a court must "first determine[] that the collectively bargained solution [] violates Title VII." *Myers v. Gilman Paper Corp.*, 544 F.2d 837, 858 (5th Cir. 1977). In other words, "[a]bsent a judicial determination, [parties] cannot alter the collective bargaining agreement without the Union's consent." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 771 (1983).

In sum, courts, including this one, have long rejected the notion that parties can simply agree to dispense with the age-old protections of state civil-service laws and collective bargaining over the objection of the union. Rather, an adjudication on the merits is required, one which will occur only if intervention is granted.

### E. There Is No Violation of Federal Law That Would Warrant a Consent Decree.

The requirement for Appellants to protect their interests through intervention and an adjudication on the merits is made even more

[4] *See also Milliken v. Bradley*, 433 U.S. 267, 281-82 (1977) ("The well-settled principle that the nature and scope of the remedy are to be determined by the violation means simply that federal-court decrees must directly address and relate to the constitutional violation itself.").

necessary because in this case there is no violation of Title VII. Disparate impact requires "a showing of a substantial statistical disparity between protected and non-protected workers in regards to employment or promotion." *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) (citation and quotation marks omitted). But statistical disparity is not enough; the DOJ also "must both identify the employment practice that has the allegedly disproportionate impact and establish causation." *Id.* (citing *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977 (1988)). While the DOJ will likely be able to show statistical disparity, it cannot establish causation—meaning there is no federal-law violation. And without a violation of federal law, there is no justification for shoving aside state law or the CBA to enter the proposed consent decree.

### 1. The 2013 Hiring Process Did Not Violate Title VII Because That Process Was Never Used and There Is No Equally-Valid Alternative.

The 2013 hiring process could not have violated Title VII because it was never put into use. Despite completing the major sections of the test, the City never certified (i.e., finalized) the process. Because no person was hired as a result of the 2013 process, it could not have caused any adverse impact and cannot form the basis of the decree.

Regardless, the 2013 process was valid (as conceded by the DOJ's expert, Dkt. 3-3 at 11), and there was no equally valid alternative that

reduced adverse impact as required by the EEOC Guidelines. EEOC Guidelines at § III(52), *available at* http://uniformguidelines.com/qandaprint.html (if a test is valid, "The burden is then on the person challenging the procedure to show that there is another procedure with better or substantially equal validity which will accomplish the same legitimate business purposes with less adverse impact."). The DOJ's experts provided no showing that any alternative decreased adverse impact. Instead, an analysis of the 2013 process shows that the proposed alternative, using two factors of the written examination as opposed to the full five factors, has the same or more adverse impact according to the EEOC's 4/5th rule than the unmodified 2013 process at many of the likely end-selection points:[5]

[5] This analysis was conducted based on records received from the DOJ containing the results of the 2013 hiring process and is intended only to be a representative sample. The unmodified 2013 NELF examination had many other points throughout the rank-ordered list in which the proposed alternative exhibited the same or greater adverse impact. An expert analysis also was conducted by Intervenors' expert, Dr. Winfred Arthur, but that is not currently part of the district court record.

| | **2013 Process Unmodified Adverse Impact (based on 4/5th rule)** | | **Proposed Alternative Two-Factor Adverse Impact (4/5th rule)** | | **Difference in Adverse Impact (Positive = Less Adverse Impact for Unmodified)** | |
|---|---|---|---|---|---|---|
| **Last Candidate Selected** | **Hispanic** | **African American** | **Hispanic** | **African American** | **Hispanic** | **African American** |
| 86 | 0.53 | None | 0.52 | None | **-0.01** | **N/A** |
| 87 | 0.52 | None | 0.54 | None | **0.02** | **N/A** |
| 88 | 0.50 | None | 0.53 | None | **0.02** | **N/A** |
| 89 | 0.53 | None | 0.51 | None | **-0.01** | **N/A** |
| 90 | 0.51 | None | 0.51 | None | **0.00** | **N/A** |
| | | | | | | |
| 96 | 0.55 | None | 0.57 | None | **0.02** | **N/A** |
| 97 | 0.55 | None | 0.56 | None | **0.01** | **N/A** |
| 98 | 0.57 | None | 0.58 | None | **0.01** | **N/A** |
| 99 | 0.56 | None | 0.60 | None | **0.04** | **N/A** |
| 100 | 0.56 | None | 0.59 | None | **0.03** | **N/A** |
| | | | | | | |
| 120 | 0.52 | None | 0.57 | None | **0.05** | **N/A** |
| 121 | 0.51 | None | 0.59 | None | **0.07** | **N/A** |
| 122 | 0.53 | None | 0.58 | None | **0.05** | **N/A** |
| 123 | 0.55 | None | 0.58 | None | **0.03** | **N/A** |
| 124 | 0.55 | None | 0.56 | None | **0.02** | **N/A** |
| 125 | 0.56 | None | 0.56 | None | **0.00** | **N/A** |

Dkt. 39 at 7.

The lack of merit of the contention that the 2013 process was unlawful perhaps is best shown by the fact that the consent decree proposes hiring 90 firefighters using the 2013 process without any modification. *See* Dkt. 3-4 at 16 ¶ C(2)(b). If the 2013 process were truly flawed and exhibited disparate impact, and if an equally-valid alternative existed that reduced adverse impact, then it would be a violation of federal law to use the unmodified 2013 process.

### 2. There Has Been No Showing That Any Adverse Impact in the 2012 Process Was Caused by the Pass/Fail Cutoff or Rank Ordering.

The proposed consent decree also asserts that there was disparate impact in the 2012 hiring process caused by "the City's pass/fail use of the NFSI and from the City's determination and use of total scores to process applicants in descending rank order." Dkt. 3-4 at 5-6 ¶¶ L-N. However, the proposed consent decree omits that before any use of pass/fail or processing of applicants in descending rank order, the City had erroneously administered the NFSI such that it gave the candidates less time to complete the exam than prescribed. *See* Dkt. 16-4 at 18; Dkt. 3-6 at 13. Specifically, the City administered the written exam in 2 hours, rather than the 2.5 hour period prescribed. This administrative error, which the DOJ and City agree was "inadvertent[]," Dkt. 3-3 at 10, invalidated the examination. This inadvertent error is what caused the adverse impact. Dkt. 16-4 at 19 ("[T]he effects [of the timing error], if any, are likely to have been larger for Black and Hispanic applicants than for White applicants.").

In contrast, there has been no showing that the pass/fail cutoff or rank ordering caused adverse impact. Indeed, the 2012 examination results show that it would have been improbable, if not impossible, for the pass/fail cutoff or the rank ordering to have had any practical effect. Specifically, a candidate who scored lower than the 1500 candidates permitted to take the SOI would have had to achieve at least the 17th

highest score on the SOI to have been hired—bounding over 453 of his/her minority peers. *See* Dkt. 39-3 (2012 Fire Cadet List). To contend that 30 of these similarly situated individuals would have done just that lacks any basis in evidence. In fact, even the EEOC Guidelines approve of a higher cut off score when that cutoff will have no measurable effect. *See* EEOC Guidelines at § 5(H), *available at* http://uniformguidelines.com/uniguideprint.html.

Similarly, there is no evidence that the rank ordering of the candidates caused adverse impact, much less that there was any acceptable alternative. As the City's own expert concluded, "Compared to rank ordering, use of pass/fail hurdles and other types of score banding reduce operational validity because bands, in effect, discard useful information about differences among applicants that could be used to forecast future job performance." Dkt. 16-4 at 9. Any alternative to rank ordering would likely have reduced the test's validity—an improper alternative according to the EEOC Guidelines.

## II. A Stay Will Prevent Irreparable Injury to Intervenors, Will Not Significantly Harm the DOJ or the City, and Will Serve the Public Interest.[6]

Intervenors further would suffer irreparable injury should the Court not stay this matter. The City has proven that the AFA cannot

[6] The last three factors of the stay inquiry overlap with the last two intervention requirements and thus will be discussed together.

raise its concerns through collective bargaining or properly defend its statutorily provided interest absent intervention because the City has refused to collectively bargain over hiring. *See* Dkt. 39 at 2-3. Additionally, this Court has been clear that a right to object at fairness hearing is no substitute for intervention. *Edwards*, 78 F.3d at 1002-03.

Should the district court's October 29, 2014 fairness hearing go forth as scheduled, the AFA can object to the decree, but it cannot brief issues or present evidence. *See id.* Unless the Court stays the district court's ruling and expedites the appeal, a consent decree likely will be entered before this appeal is decided.

Relatedly, the City has demonstrated that it cannot be counted on to protect the Intervenors' interests. Instead, it seeks to upend the principle of collective bargaining—and unjustifiably wrest any control over the Austin Fire Department's hiring process from the AFA. *See City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012) (citizen-intervenors' interests may be inadequately represented by city when, among other things, substantial doubts were raised about city's motives and conduct in its defense of the litigation).

Unlike Intervenors, the City and DOJ will not suffer substantial harm as a result of a stay. The current suit has been pending less than four months. Compare this time with the more than a year that it took the DOJ to investigate this case and finally bring suit. Additionally, Intervenors request expedited briefing on appeal to mitigate any

potential harm. A few-month delay will not cause significant harm.

Finally, the public interest is served by granting a stay. The DOJ and City are attempting to circumvent Texas Civil Service laws, the AFA's right to collectively bargain on behalf of its members, and the seniority rights of individual firefighters who are entrusted with administering the public safety. Taken individually, each of these interests is sufficient to merit a stay; taken collectively, a stay is undoubtedly warranted. Moreover, ensuring that any consent decree has a basis in law clearly is in the public interest.

## CONCLUSION

For the foregoing reasons, the AFA respectfully asks this Court to stay any further proceedings in the district court in order to maintain the status quo until this Court can address the merits of the appeal. In addition, to minimize any harm that may be asserted by the timing of the appeal, Intervenors request that the Court expedite the appeal and require all briefing to be completed by November 15, 2014. Pursuant to Federal Rule of Appellate Procedure 8(a)(2) and Fifth Circuit ROP 27.3, Appellants further respectfully request that the Court rule on this emergency motion for stay on or before October 22, 2014.

Respectfully submitted,

By: /s/ Kevin J. Terrazas

Kevin J. Terrazas
kterrazas@wshllp.com
Sara E. Janes
sjanes@wshllp.com
Nicole S. LeFave
nlefave@wshllp.com
WEISBART SPRINGER HAYES LLP
212 Lavaca Street, Suite 200
Austin, Texas 78701
[Tel.] (512) 652-5780
[Fax] (512) 682-2074

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATION

I certify that the facts supporting emergency consideration of this Motion are true and complete to the best of my knowledge and ability.

/s/ Kevin J. Terrazas
Kevin J. Terrazas

## CERTIFICATE OF SERVICE

I certify that this Emergency Motion was filed with the Court by electronic format, on the 9th day of October, 2014, and an electronic copy of the Motion was served on counsel of record, as listed below on the same date:

B. Lee Crawford, Jr.
CITY OF AUSTIN LAW DEPARTMENT
P.O. Box 1088
Austin, TX 78767-1088

R. Lawrence Ashe, Jr.
Paul R. Barsness
PARKER, HUDSON, RAINER & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, GA 30303

**ATTORNEYS FOR APPELLEE CITY OF AUSTIN**

Delora L. Kennebrew
Meredith Burrell
Shayna Bloom
Trevor Blake
US DEPARTMENT OF JUSTICE
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue NW
Washington, DC 20530

**ATTORNEYS FOR APPELLEE UNITED STATES OF AMERICA**

/s/ Kevin J. Terrazas
Kevin J. Terrazas